UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

CASE NO.: 8:17-cr-247-T-24MAP

vs.

THOMAS MAURICE ROGERS

_____/

**ORDER**

This cause comes before the Court on Defendant Thomas Maurice Rogers's Motion to Suppress (Doc. 23), to which the Government has filed a response in opposition (Doc. 14). On May 17, 2017, Defendant was indicted on one count of possession of a firearm by a felon in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(2). (Doc. 1). Defendant now moves to suppress as evidence the firearms and ammunition seized during a search of Defendant's residence on March 9, 2017.

An evidentiary hearing was held on the Motion to Supress on August 2, 2017. (Doc. 27). The Government presented the testimony of Gregory Ward, the Florida Department of Corrections Probation Officer assigned to supervise Defendant, and Justin Mace, an ATF special agent who participated in the search of Defendant's residence. Defendant presented the testimony of Clark Bolton, a private investigator hired by Defendant, and Carlotta Woods Rogers, Defendant's wife. At the conclusion of the hearing, the Court made factual findings, which are repeated here in part.

**Findings of Fact**

1. Defendant was sentenced to five years of probation by a state court judge in The Sixth Judicial Circuit in and for Pinellas County, Florida, after pleading guilty to felony battery.

2. Defendant's Order of Probation, signed by Defendant on June 2, 2016, had a search provision that states "[y]ou shall submit your person, property, place of residence, vehicle or personal effects to a warrantless search at any time by any probation officer, community control officer, or law enforcement officer." The Order of Probation further provides that "[y]ou will not possess, carry or own any firearm."

3. Defendant signed the "Instructions to the Offender" document on May 12, 2016, which warned Defendant that "[p]robation officers will conduct home verifications routinely and need to have access to your residence. Probation officers have the right to search your residence."

4. On May 23, 2016 during a home visit, Gregory Ward, Defendant's probation officer, observed motion sensor lights on Defendant's residence.

5. On October 25, 2016 during another home visit, Officer Ward observed cameras outside Defendant's residence and a closed circuit monitor in Defendant's bedroom used to monitor the outside of the residence.

6. On November 2, 2016, Defendant expressed opposition to Officer Ward doing a walkthrough of Defendant's residence.

7. Officer Ward was aware that Defendant had asked his attorney to file a motion to prevent the probation office from doing walkthroughs of Defendant's residence.

8. Officer Ward was aware that Defendant had previously been arrested for felony battery and charges involving firearms.

9. Officer Ward learned from Defendant that Defendant spent approximately $20,000 on Christmas gifts despite reporting that his income was only $1,500 per month.

10. Based on this information, Officer Ward believed that illegal activity was being conducted within Defendant's residence. Specifically, he believed Defendant may have been involved in drug dealing and that firearms may be located inside the residence.

11. On March 9, 2017, Officer Ward, ATF special agent Justin Mace, and other officers from the St. Petersburg Police Department and the ATF conducted a compliance search of Defendant's residence.

12. During the search, the officers found four firearms and ammunition in Defendant's bedroom.

13. Defendant was arrested for violating his probation.

14. On May 17, 2017, Defendant was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(2).

## Discussion

Defendant now moves to suppress the firearms and ammunition seized during the March 9, 2017 warrantless search of his residence. The Fourth Amendment's protections against "unreasonable searches and seizures" applies to probationers. *Owens v. Kelley*, 681 F.2d 1362, 1367 (11th Cir. 1982). However, probationers have a diminished expectation of privacy and "are subject to limitations to which ordinary citizens are free." *Id.* at 1367–68. Where, as here, a probationer is subject to a search condition in his probation order, the probation officer must have a reasonable suspicion that the probationer is engaged in criminal activity in order to conduct a

search of the probationer's residence. *United States v. Knights*, 534 U.S. 112, 121 (2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.").

Reasonable suspicion consists of "a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (quoting *Knights,* 534 U.S. at 121). In order to determine whether reasonable suspicion is present, courts look to the "totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." *Id.* The officer may consider their entire experience with the probationer, including knowledge of the probationer's criminal history. *Id*. The officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* (quoting *United States v. Boyce*, 351 F.3d 1102, 1107 (11th Cir.2003) (internal quotation marks omitted)).

Here, based on the totality of the circumstances, the Court concludes that the March 9, 2017 search of Defendant's residence was supported by reasonable suspicion. Officer Ward observed motion sensor lights and a closed circuit video monitoring system at Defendant's residence. He was aware of Defendant's prior criminal history, including felony battery and other charges involving firearms. Further, Officer Ward knew Defendant had expressed opposition to a home walkthrough on a prior occasion and knew that Defendant had asked his attorney to file a motion to prevent the probation office from doing walkthroughs of Defendant's residence, despite the search condition in his Probation Order. Finally, Officer Ward heard from Defendant that he

had spent approximately $20,000 on Christmas gifts despite only reporting $1,500 a month in income.[1]

While none of these actions violated any law, the Court must take into account the fact that an experienced officer can infer criminal activity from conduct that may seem innocuous to lay observers. *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002). Based on Officer Ward's knowledge of Defendant's prior convictions, his belief that Defendant spent a large amount of money he did not legally earn on Christmas gifts, and his observations of Defendant's efforts to secure his residence, it was reasonable for Officer Ward to conclude that Defendant was supplementing his income by illegal means and that there would be evidence of illegal activity within Defendant's residence. Accordingly, the Court **DENIES** Defendant's Motion to Suppress (Doc. 23).

**DONE AND ORDERED** at Tampa, Florida, this 8th day of August, 2017.

SUSAN C. BUCKLEW
United States District Judge

**Copies furnished to:**
Counsel of Record

---

[1] While Defendant's wife testified that they spent only $2,000 on Christmas gifts that year, the Court must focus on what was known by Officer Ward. *See United States v. Smith*, 201 F.3d 1317, 1323 (11th Cir. 2000) (stating that in order to determine whether reasonable suspicion exists, courts evaluate a totality of the circumstances from the viewpoint of the officer).